UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DENISE ROCK,

                Plaintiff,

      v.

LIFELINE SYSTEMS COMPANY,

                Defendant.

C.A. No. 1:13-CV-11833-MBB

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT LIFELINE SYSTEMS COMPANY'S PARTIAL MOTION TO DISMISS

Defendant Lifeline Systems Company ("Lifeline") hereby submits this Memorandum of Law in Support of its Partial Motion to Dismiss pursuant to Rule 12(b)(6).  As set forth herein, Defendant respectfully requests that this Court dismiss the following causes of action asserted in Plaintiff Denise Rock's First Amended Complaint (the "Complaint") for failure to state a claim upon which relief may be granted:  Count I (Gender Discrimination under M.G.L. c. 151B); Count II (Gender Discrimination under 42 U.S.C. § 2000(e) and 29 U.S.C. § 621); Count V (Wrongful Termination in Violation of Public Policy); and Count IX (Wrongful Termination under Whistleblower Protection of Consumer Product Safety Improvement Act, 15 U.S.C. § 2087).

## FACTS AND BACKGROUND[1]

Lifeline employed Denise Rock ("Ms. Rock" or "Plaintiff") as an account representative (in her terms, a "sales person") for approximately twelve years until on or about June 14, 2012,

---

[1]  For the purpose of this Memorandum and in light of the Court's standard of review on a motion to dismiss, the facts recited herein are gleaned directly from Plaintiff's First Amended Complaint.  Lifeline treats those alleged facts as true exclusively for the purposes of this Motion and Memorandum.  Moreover, Lifeline reserves the right to challenge the veracity of those allegations in this or in any other proceeding in the future.  Lifeline further reserves the right to offer affirmative defenses with respect to all of those allegations.

at which time her employment terminated.  *See* Complaint at ¶ 9.  Lifeline manufactured and sold medical devices used to provide medical alert warnings from a customer's home or residence to a central location from which assistance could be provided to the customer.  *Id.* at ¶ 12.  Customers and subscribers wear a button, typically around their neck or wrist, that they can press in case of emergency to transmit a signal to a transmitter in their home and, in turn, to a trained response associate available around the clock.  *Id.*

　　Ms. Rock claims that, during the course of her employment, she became suspicious that there were problems or defects with some Lifeline devices.  *See* Complaint at ¶ 12.  She further alleges that she reported her suspicions to others at Lifeline, and that Lifeline retaliated against her for doing so by giving her low performance ratings, by placing her on a performance improvement plan, and ultimately by terminating her employment.  Based on these allegations, Ms. Rock alleges that she was a whistleblower protected by two federal laws – the Sarbanes-Oxley Act (18 U.S.C. § 1514A) and the Consumer Product Safety Improvement Act (15 U.S.C. § 2087) – and that Lifeline retaliated against her in violation of those laws.  *See id.* at ¶¶ 17-27, 30-46.  Further, Ms. Rock alleges that "[a]lthough retaliation against [her] for her whistleblowing was part of the reason for the unfair treatment to which she was being subjected, and for which her employment was terminated, discrimination against Ms. Rock due to her age and her gender are also a reason for the unfair treatment."  *Id.* at ¶ 24.  According to Ms. Rock, "male employees, and in particular younger female employees, were held to a less strict performance standard than Ms. Rock had been held to, as an older employee and a female."  *Id.* at ¶ 24.  In

addition, Plaintiff alleges, "[t]he sales representative who was hired to replace Ms. Rock was a female in her 30's . . . ."  *Id.* at ¶ 26.[2]

On April 26, 2012, Ms. Rock filed a Charge of Discrimination with the Massachusetts Commission Against Discrimination (the "MCAD") and the U.S. Equal Employment Opportunity Commission (the "EEOC").  *See* Complaint at ¶¶ 4, 26.  On May 7, 2012, Ms. Rock filed a charge of alleged violations of the whistleblower provisions of the federal Sarbanes-Oxley Act with the U.S. Department of Labor, and at some unspecified time thereafter also added a charge of alleged violations of the whistleblower provisions of the federal Consumer Product Safety Improvement Act.  *Id.*  Ms. Rock alleges that

> to whatever extent Philips/Lifeline may have believed Ms. Rock had performance issues, and to whatever extent age or gender discrimination were not part of the decision to terminate Ms. Rock's employment, Ms. Rock's employment would not have been terminated if not for the fact that Ms. Rock had filed a Charge of Discrimination with the Massachusetts Commission Against Discrimination, and a charge of violation of the Sarbanes-Oxley law with the U.S. Department of Labor, and complained about Lifeline's products and the failure to report defects in those products.

*Id.* at ¶ 38.  Specifically, Ms. Rock alleges that Lifeline deceived shareholders, engaged in securities fraud, and committed corporate fraud on its investors.  *Id.* at ¶¶ 40, 44-46.  She claims that information she provided to supervisors or managers related to the alleged securities fraud under the Sarbanes-Oxley law, and also to alleged violations of the Consumer Product Safety Improvement Act.  *Id.* at ¶¶ 42, 46-48.

Ms. Rock's employment with Lifeline was terminated on June 14, 2012.  *See* Complaint at ¶ 29.[3]  On December 14, 2012, Ms. Rock filed a second charge of discrimination with the

---

[2] Although Ms. Rock also states that her territory was assigned to a male employee in his 40's, she alleges that her actual ***replacement*** was the younger female employee, and that Lifeline put the older male employee in her territory solely to hide its alleged age discrimination.  *See* Am. Compl. ¶ 26.

MCAD and the EEOC, and she received a right to sue letter on May 9, 2013.  *See id.* at ¶¶ 4-5.

On August 1, 2013, Ms. Rock filed this lawsuit against Lifeline.

## STANDARD OF REVIEW

To withstand a Rule 12(b)(6) motion to dismiss, a plaintiff's complaint "must 'possess

enough heft' to set forth 'a plausible entitlement to relief.'"  *Evergreen Partnering Grp., Inc. v.*

*Pactiv Corp.*, 865 F. Supp. 2d 133, 138 (D. Mass. 2012) (quoting *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 557, 559 (2007)); *see Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 224 (1st Cir.

2012) ("Plausibility is the touchstone by which the sufficiency of the complaint is gauged.").  "A

pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of

action will not do."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Rather, "[f]actual allegations

must be enough to raise a right of relief above the speculative level."  *Twombly*, 550 U.S. at 555.

"If the factual allegations in the complaint are too meager, vague, or conclusory to remove the

possibility of relief from the realm of mere conjecture, the complaint is open to dismissal."

*Morales-Cruz*, 676 F.3d at 224 (quoting *S.E.C. v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010)).

## ARGUMENT

Ms. Rock fails to state a claim for gender discrimination in Counts I and II of her

Complaint, even taking as true the allegations of her Complaint.  Further, her claim in Count V

of the Complaint for wrongful termination in violation of public policy must be dismissed as a

matter of law because it is preempted by the federal statute that she relies upon as the basis for

the alleged public policy at issue.  Finally, Ms. Rock's whistleblower claim under the Consumer

Product Safety Improvement Act (the "CPSIA") fails as a matter of law because Lifeline devices

are not regulated by the CPSIA.

---

[3] Elsewhere in her Complaint, Ms. Rock alleges that Lifeline terminated her employment one year later, on June 14, 2013.  *See* Am. Compl. ¶ 37.

I.      **Plaintiff Fails To State A Claim For Gender Discrimination.**

To state a claim for gender discrimination under federal and Massachusetts law, a plaintiff must plead facts that, if true, would establish the following elements: (1) membership in a protected group, (2) performance of her job at a satisfactory level, (3) termination from employment, and (4) that the position remained open or the employer hired a member of an unprotected group with the same or lesser qualifications than the plaintiff.  *See Ayanna v. Dechert, LLP*, 914 F. Supp. 2d 51, 56 (D. Mass. 2012).  On a Rule 12(b)(6) motion to dismiss, "a complaint asserting sex discrimination must plausibly allege that the plaintiff experienced an adverse employment action taken on the basis of her gender."  *Morales-Cruz*, 676 F.3d at 224. The standard to establish a claim for sex discrimination under both M.G.L. c. 151B and 42 U.S.C. § 2000(e) is essentially the same.  *Ryan v. Greater Lawrence Tech. Sch.*, 896 F. Supp. 2d 117, 129 (D. Mass. 2012) (holding that to establish claim under federal and under Massachusetts law, plaintiff must show she experienced an adverse employment action on the basis of her gender).

Thus, to state a gender discrimination claim, [a] plaintiff must make a plausible allegation that her position remained open or was filled by a member of an unprotected group with the same or lesser qualifications than the plaintiff.  *See Ayanna*, 914 F. Supp. 2d at 56.  Here, Ms. Rock, a female, has failed to plead that her position remained open or that Philips hired a male to replace her.  *See Ayanna*, 914 F. Supp. 2d at 56; *Williams v. Raytheon Co.*, 220 F.3d 16, 20 (1st Cir. 2000) (determining no reasonable inference of discriminatory purpose when male claimed gender discrimination but evidence showed supervisor hired other males).  On the contrary, Ms. Rock alleges that the "sales representative who was hired to replace [her] was a female in her 30's . . . ."  Am. Comp. ¶ 26.  Further, to the extent that Ms. Rock's gender discrimination claims are based on her allegations of disparate treatment short of employment termination, those claims

are fatally undermined by her allegation that the employees who "were held to a less strict performance standard" than the one that Lifeline allegedly applied to her were "younger *female[s]*." *Id.* at ¶ 24 (emphasis added).  Ms. Rock cannot state a claim against Lifeline for discriminating against her as a woman when she unequivocally alleges that the employees who she claims were treated more favorably than she was were also females, and when she alleges that Lifeline hired a woman to replace her.  *See Williams*, 220 F.3d at 20 (holding no inference of discrimination when evidence showed supervisor hired member of same protected class).

Further, the Complaint contains no other allegations of fact that could conceivably support Rock's claim for gender discrimination.  *See* Complaint at ¶¶ 1-70.  Ms. Rock does not plead any facts plausibly indicating that Lifeline favored male employees or treated its male and female employees differently from one another on the basis of their gender.  *See Twombly*, 550 U.S. at 555 (requiring factual allegations sufficient to raise a right to relief above the speculative level).  For example, Plaintiff has not pled that male employees with performance issues similar to hers were not terminated or disciplined by Lifeline.  Instead, as noted above, Ms. Rock actually claims the opposite – that female employees were treated *more* favorably than she was, and that the company hired a woman to replace her.  *See* Am. Compl. ¶¶ 24, 26.  Thus, taking the allegations stated in her Complaint as true, Ms. Rock fails to state a plausible claim for gender discrimination.

## II.   Plaintiff's Claim For Wrongful Termination In Violation Of Public Policy Is Preempted And Therefore Fails As A Matter Of Law.

The cause of action for wrongful termination of an at-will employee is only recognized in a defined set of circumstances under which the termination violated a clearly-established public

policy.[4] *Ruffino v. State St. Bank & Trust Co.*, 908 F. Supp. 1019, 1052 (D. Mass. 1995) (citing

*King v. Driscoll*, 418 Mass. 576, 581-82 (1994)).  This cause of action is a narrow exception to

the general rule that an at-will employee can be terminated with or without cause at any time.

*See id.* (observing that the public policy exception is a narrow one); *Wright v. Shriners Hosp. for*

*Crippled Children*, 412 Mass. 469, 472 (1992) (recognizing exception for well-defined public

policies such as asserting a legally guaranteed right, doing what the law compels, or refusing to

do what the law forbids).  To apply the cause of action more broadly "would convert the general

rule [of at-will employment] . . . into a rule that requires just cause to terminate an at-will

employee."  *King*, 418 Mass. at 582.  The public policy that the plaintiff claims was violated by

the termination of his or her employment must derive from a statute.  *See, e.g.*, *Wright v.*

*Shriners Hosp. for Crippled Children*, 412 Mass. 469, 473-75 (1992).

Further, it is well-established that if the public policy that the plaintiff claims was

violated by the termination of her employment derives from a statute that provides a remedy for

persons situated as the plaintiff is, then any policy-based wrongful discharge claim is preempted

by the statute.  *See, e.g.*, *Ruffino*, 908 F. Supp. at 1052 (dismissing claim for wrongful

termination in violation of public policy when public policy is rooted in c. 151B, which provides

remedial measures); *Fairneny v. Savogran Co.*, 422 Mass. 469, 473-75 (1996) (holding that a

claim for wrongful termination in violation of public policy that depended on ERISA, which

provides remedies, is preempted by ERISA); *Melley v. Gillette Corp.*, 19 Mass. App. Ct. 511,

513-14 (1985) (holding that where there is a comprehensive remedial statute, such as Mass. G.L.

c. 151B, a common law action based on a public policy derived from the statute would interfere

---

[4] Ms. Rock does not plead—nor could she—that she is anything but an at-will employee.  Absent such an
assertion, employment is presumed to be at-will.  *Hinchey v. NYNEX Corp.*, 144 F.3d 134, 141 (1st Cir.
1998) ("It is well settled in Massachusetts that employment is presumed to be at-will unless there exists
an express or implied contract governing its terms and conditions.").

with the statutory scheme and does not exist); 45 Mass. Prac., *Employment Law* § 3.4 (2d ed.) ("if the employee has an express statutory remedy available, that remedy is exclusive; the court will not supply a common law public policy remedy when none is required").[5]  Thus, when the statute giving rise to the public policy at issue provides a comprehensive remedy for the violation of that policy, no common law claim for wrongful termination in violation of the policy exists. *Melley*, 19 Mass. App. Ct. at 511-12; *see Ruffino*, 908 F. Supp. at 1052 ("Where, as here, the public policy is articulated in a comprehensive remedial statute . . . and recognition of the claim would lead to the creation of a new common law action based on the public policy expressed in that statute and interfering . . . with that remedial scheme . . . the common law claim will not be allowed") (internal citations and punctuation omitted).  Thus, the common law claim for wrongful termination is a narrow exception to the at-will employment rule, and it may not be invoked when, as in this case, there is an adequate statutory remedy.

There is no question that the Sarbanes-Oxley law, which Plaintiff invokes here as the source of the public policy that her discharge supposedly violated, provides a cause of action to whistleblowers who claim to have been retaliated against.  *See* 18 U.S.C. § 1514A.  Thus, the First Circuit has held that a plaintiff like Ms. Rock simply does not have a claim for wrongful termination in violation of public policy under Massachusetts common law when the basis for the alleged wrongful termination is a complaint about company policies allegedly amounting to fraud in violation of the Sarbanes-Oxley Act ("SOX").  *See Day v. Staples*, 555 F.3d 42, 59-60 (1st Cir. 2009).  As the court of appeals explained,

---

[5] *See also Masters v. Daniel Int'l Corp.*, 917 F.2d 455, 457 (10th Cir. 1990) (ruling that the federal Energy Reorganization Act governing nuclear plant safety precluded an aggrieved employee from recovering for wrongful termination in violation of state common law because the Act provided adequate remedies to the aggrieved employee).

> [i]n passing SOX, Congress aimed to create comprehensive
> legislation to fill the gaps in a patchwork of state laws governing
> corporate fraud and protections for whistleblowers.  It would be
> entirely inappropriate for plaintiff to be able to use a federal statute
> designed to address the inadequacies of state law to create a . . .
> common law cause of action under Massachusetts law.

*Id.* at 60.  Here, Ms. Rock's Complaint is replete with references to SOX and securities fraud.

*See generally* Complaint at ¶¶ 1-70.  In fact, she specifically alleges that she "engaged in conduct

and activity which is protected by [SOX]" and that "[t]he circumstances of the adverse actions

taken against Ms. Rock prove that her protected activity was a contributing factor, and was the

reason, for the adverse actions taken against her."  Am. Comp. ¶ 62.  According to Ms. Rock, the

reason for her termination was her engagement in activities protected by SOX.

Accordingly, Ms. Rock cannot use SOX, a federal statutory scheme specifically intended

to provide the whistleblower protection applicable to persons situated as she is, as the basis of a

claim for relief under state common law.  *See Day*, 555 F.3d at 59-60; *Ruffino*, 908 F. Supp. at

1052; *Fairneny*, 422 Mass. at 473-75.  Because Ms. Rock's claim for wrongful termination in

violation of public policy is based on her alleged reporting of facts she claims demonstrate

securities fraud and/or other violations of SOX, which includes a comprehensive whistleblower

remedy, SOX provides her remedy, and she is not entitled to a claim under the Massachusetts

common law exception.  *See Day*, 555 F.3d at 60; *Ruffino* 908 F. Supp. at 1052.  Indeed, Ms.

Rock has brought a separate claim under the SOX whistleblower statute.[6]

Similarly, if Ms. Rock were to argue that the public policy violated by the termination of

her employment were created by the CPSIA,[7] Title VII, the ADEA, or Chapter 151B, her claims

would also be preempted because all of those statutes contain comprehensive remedial

---

[6]  Lifeline is not seeking dismissal of Mr. Rock's SOX whistleblower claim in this Motion.

[7]  *See infra* part III for a discussion of the applicability of the CPSIA.

provisions expressly designed to vindicate the public policies to which they give rise. *See* 15

U.S.C. § 2087; 42 U.S.C. § 2000e-5; 29 U.S.C. § 626(c); Mass. G.L. c. 151B, § 9.   Accordingly,

Ms. Rock has no common law claim for wrongful termination in violation of any public policy

based on those statutes. *See, e.g.*, *Ruffino*, 908 F. Supp. at 1052; *Melley*, 19 Mass. App. Ct. at

511-12.   And because she identifies in her Complaint no other potential source of a public policy

that could render Lifeline's termination of her at-will employment wrongful, she has failed to

state a claim under Massachusetts law for wrongful termination in violation of public policy, and

her claim in Count V of the Complaint should be dismissed.

III.    **Plaintiff's Whistleblower Claim Under The CSPIA Fails As A Matter Of Law Because Lifeline's Devices Are Not Covered By The CSPIA, And Because Plaintiff Has Failed To Allege Compliance With The CSPIA's Procedural Requirements.**

A.    **The Lifeline Devices Are Not Consumer Products Under The CSPIA And, Therefore, Ms. Rock Cannot State A Claim For CSPIA Whistleblower Protection.**

The CPSIA whistleblower protection provides that "no manufacturer, private labeler,

distributor, or retailer, may discharge an employee or otherwise discriminate against an

employee . . . because the employee . . . provided . . . information relating to any violation of, or

any act or omission the employee reasonably believes to be a violation of any provision of this

chapter or any other Act enforced by the [Consumer Product Safety] Commission . . . ."   15

U.S.C. § 2087(a).[8]   The CPSIA governs safety standards for "consumer products." 15 U.S.C. §

2052.   The definition of the term "consumer products" in the CPSIA explicitly <u>excludes</u> "drugs,

*devices*, or cosmetics (as such terms are defined in sections 201(g), (h), and (i) of the Federal

---

[8] In addition to the CPSIA, the Consumer Product Safety Commission (the "Commission") enforces the Consumer Product Safety Act (the "CPSA"), the Federal Hazardous Substances Act, the Flammable Fabrics Act, the Poison Prevention Packaging Act, the Refrigerator Safety Act, the Children's Gasoline Burn Prevention Act, and the Virginia Graeme Baker Pool and Spa Safety Act.  Ms. Rock claims that her alleged whistleblowing involves products allegedly covered by the CPSIA, not by these other statutes. *See* Complaint at ¶ 41 (alleging that the Lifeline devices are consumer products under the CPSIA).

Food, Drug, and Cosmetic Act . . .).”  15 U.S.C. § 2052(5)(H) (emphasis added).  The Federal

Food, Drug, and Cosmetic Act (“FDCA”) defines “device” as “an instrument, apparatus,

implement, machine, contrivance, implant, in vitro reagent, or other similar or related article,

including any component, part, or accessory, which is . . . intended for use in the diagnosis of

disease or other conditions, or in the cure, mitigation, treatment, or prevention of disease . . . .”

21 U.S.C. § 321(h).  Products that are registered as “devices” under the FDCA are regulated by

the Food and Drug Administration (“FDA”), and not by the Consumer Product Safety

Commission.  *See* 15 U.S.C. § 2052(5)(H); 16 C.F.R. § 1000.2; *see also Buckman Co. v.

Plaintiffs’ Legal Comm.*, 531 U.S. 341, 343-44 (2001) (discussing regulation of FDCA medical

devices by FDA); *see generally* 21 U.S.C. §§ 360 *et seq.* (providing for medical device

regulation).

      The Lifeline products at issue in this lawsuit are (and are registered as) “devices” under

the FDCA, are regulated by the FDA, and thus are not “consumer products” covered by the

CPSIA or regulated by the Consumer Product Safety Commission.  *See* Affidavit of Andrew

Silvia (“Silvia Aff.”) at Exhs. A-E.[9]  In particular, the Lifeline Personal Response System is

listed with the FDA as a registered device.  *See* Silvia Aff. Exh. C (Registration & Device

Listing).  In 1991, Lifeline filed a 510(k) Premarket Notification for the Lifeline Personal

---

[9] The documents attached to Mr. Silvia’s Affidavit are public records available (and obtained by Mr. Silvia) via the FDA’s Internet website.  Accordingly, the Court may refer to and rely upon these records in deciding Lifeline’s Motion to Dismiss.  *See, e.g., Butler v. Balolia*, No. 13-1329, __ F.3d __, 2013 WL 6153784, at *1 (1st Cir. Nov. 22, 2013) (holding that, in deciding a motion under Rule 12(b)(6), the court “may supplement [the complaint’s] factual allegations by examining documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice.” ) (internal citations omitted); *Warren Freedenfeld Assocs., Inc. v. McTigue*, 531 F.3d 38, 44 (1st Cir. 2008) (allowing consideration (on a motion to dismiss for failure to state a claim) of facts and documents that are not included in the Complaint but that are “susceptible to judicial notice”).  This Court on a motion to dismiss has taken judicial notice of and directly considered in its ruling public information available on the FDA’s website.  *See In re Fruit Juice Prods. Mktg. & Sales Practice Litig.*, 831 F. Supp. 2d 507, 509 (D. Mass. 2011) (allowing and taking judicial notice of information from FDA website and granting defendant’s motion to dismiss based on it).

Response System—the Lifeline alert buttons to which Ms. Rock refers in her Complaint. *See id.* at Exh. D (Lifeline 510(k) Premarket Notification). The Lifeline device is classified by the FDA as a "powered communication system," pursuant to Regulation Number 890.3710. *See id.*; *see also* Silvia Aff. Exh. E (FDA Product Classification). The regulation identifies a "powered communication system" as "an AC- or battery-powered device intended for medical purposes that is used to transmit or receive information." 21 C.F.R. § 890.3710. The Lifeline devices, according to Ms. Rock herself, do just that. *See* Am. Compl. ¶ 12 (describing Lifeline devices).[10]

Because the Lifeline devices are regulated by the FDA pursuant to the FDCA, they are not consumer products governed by the CPSIA. *See* 15 U.S.C. § 2052(5)(H) (excluding devices regulated by FDA); Silvia Aff. Exhs. A-E (providing public information on FDA regulation of Lifeline device). Therefore, any statements made or information provided by Ms. Rock regarding the Lifeline devices are not "information relating to any violation of . . . any provision of this chapter or any other Act enforced by the Commission," and cannot be considered a protected act under the CPSIA's whistleblower provision. 15 U.S.C. § 2087(a). Accordingly, Ms. Rock's claim under that whistleblower statute fails as a matter of law.

### B. Ms. Rock also Failed to Comply with the Procedural Requirements of the CPSIA Whistleblower Statute.

Even if this Court were to determine that the Lifeline devices are consumer products covered by the CPSIA and regulated by the Consumer Product Safety Commission, Ms. Rock's CPSIA claim still must fail because she did not comply with the CPSIA's procedural requirements, which require that any complaint be filed with the Secretary of Labor within 180

---

[10] In 1997, the FDA exempted Class II devices, including "powered communication systems" such as Lifeline, from premarket notification requirements; thus, Lifeline does not have a more recent filing for the devices. *See* Silvia Aff. Ex. E (noting new exemption). Nonetheless, the Lifeline devices remain regulated by the FDA and fall within the descriptions provided in the statute and regulations. *See* 21 U.S.C. § 321(h) (instruments intended for use in prevention of disease); 21 C.F.R. § 890.3710.

days of the alleged violation.  *See* 15 U.S.C. § 2087(b).  Ms. Rock alleges only that she filed a

SOX complaint with the Secretary of Labor in May 2012, and that she "later added to her claim

with the U.S. Department of Labor a charge of violation of the whistleblower provisions of the

[CPSIA]."  Complaint at ¶ 4.  She does not state anywhere in the Complaint, however, that she

filed her CPSIA claim with the Secretary of Labor within 180 days of the alleged violation.

When, as in this case, a plaintiff fails to allege compliance with the procedural requirements of

the CPSIA whistleblower statute, the claim is subject to dismissal.  *See Jallali v. USA Funds*, No.

11-62510-CIV, 2012 WL 3291873, at *5 (S.D. Fla. Aug. 13, 2012) (dismissing CPSIA

whistleblower claim where "Complaint does not contain any allegation that [plaintiff] complied

with any of the procedural requirements of 15 U.S.C. § 2087(b).").

<u>CONCLUSION</u>

For all of the foregoing reasons, Lifeline respectfully requests that this Court grant its

Motion to Dismiss Plaintiff's claims for gender discrimination (under state and federal law),

wrongful termination in violation of public policy, and wrongful termination in violation of the

CPSIA's whistleblower provision.  Plaintiff fails to state a claim upon which any relief may be

granted on Counts I, II, V, and IX.

Respectfully submitted,

LIFELINE SYSTEMS COMPANY,

By its attorneys,


/s/ Andrew E. Silvia _____
Patrick M. Curran, Jr., BBO #659322
Andrew E. Silvia, BBO #681922
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
One Boston Place, Suite 3220
Boston, MA 02108
Telephone:  617.994.5700
Facsimile:  617.994.5701
patrick.curran@ogletreedeakins.com
andrew.silvia@ogletreedeakins.com

Dated:  December 10, 2013

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF") and paper copies will be sent to those indicated as non-registered participants on December 10, 2013.

/s/ Andrew E. Silvia
Andrew E. Silvia

16624482.1